## STATE OF CONNECTICUT *v.* SEAN RAMIREZ
### (SC 18159)

Rogers, C. J., and Katz, Palmer, Vertefeuille and Zarella, Js.

Argued February 17—officially released July 21, 2009

---

[23] Most state courts follow this approach. See 6 W. LaFave, J. Israel & N. King, Criminal Procedure (3d Ed. 2007) § 24.10 (b), p. 549.

*Jodi Zils Gagne,* for the appellant (defendant).

*Kathryn Ward Bare,* deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Brian J. Leslie,* assistant state's attorney, for the appellee (state).

*Opinion*

ROGERS, C. J. The defendant, Sean Ramirez, was convicted, after a jury trial, of assault in the second degree in violation of General Statutes § 53a-60 (a) (2)[1] and of threatening in the second degree in violation of General Statutes § 53a-62 (a) (1). The defendant appealed from the judgment to the Appellate Court, which affirmed the judgment of conviction. *State* v. *Ramirez,* 107 Conn. App. 51, 66, 943 A.2d 1138 (2008). Thereafter, this court granted the defendant's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly determine that a verdict of guilty of assault in the second degree is not inconsistent with a verdict of not guilty of carrying a dangerous weapon?" *State* v. *Ramirez,* 287 Conn. 915,

[1] General Statutes § 53a-60 (a) provides in relevant part: "A person is guilty of assault in the second degree when . . . (2) with intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument other than by means of the discharge of a firearm . . . ."

950 A.2d 1290 (2008). We affirm the judgment of the Appellate Court.

As set forth in the Appellate Court's opinion, the jury reasonably could have found the following facts. "The victim[2] was driving on College Street in New Haven during the afternoon of October 29, 2003, when he noticed a black sport utility vehicle, driven by the defendant, weaving erratically. Both the victim and the defendant stopped their vehicles for a red traffic signal in adjacent lanes at the intersection of College Street and Chapel Street. When the traffic signal turned green, the defendant accelerated rapidly and switched into the victim's lane, cutting him off. In response, the victim moved his car into the neighboring lane, but the defendant also switched lanes, cutting the victim off a second time. The victim was forced to brake to avoid a collision and, consequently, flashed his high beam headlights to alert the defendant to his presence. The defendant then braked abruptly, forcing the victim also to brake swiftly to avoid hitting the defendant's car. After the defendant resumed traveling forward, he changed lanes and slowed his vehicle. When the victim drove past him, the defendant immediately switched back into the victim's lane. The defendant twice accelerated toward the victim's car as if intending to ram it, slowing down just before contact. The victim, concerned for his safety, changed lanes two more times to avoid the defendant. When the victim came to a stop at a red traffic signal at the intersection of College Street and North Frontage Road in the center lane, the defendant drove abreast of him in the right lane. Through his closed windows, the victim could see that the defendant was angrily yelling and gesticulating at him.

---

[2] "We decline to identify the victim in the interest of protecting his privacy. See *State* v. *Epps*, 105 Conn. App. 84, 86 n.2, 936 A.2d 701 (2007), cert. denied, 286 Conn. 903, 943 A.2d 1102 (2008)." *State* v. *Ramirez*, supra, 107 Conn. App. 54 n.1.

"The defendant then exited his car, ran to the victim's driver side window and began pounding his fists against the glass. The victim, afraid that the defendant would hurt him, reached between the front seats and into the back of his car and grabbed his baseball bat to protect himself. Just after the victim got the bat, the defendant punched his fist through the driver's side window, reached into the victim's car and wrenched the bat out of his hands. The defendant stated: 'I'm glad you gave me this bat because now I'm going to beat the hell out of you and kill you with it.' The defendant then began hitting the victim, while the victim tried to deflect the blows with his feet. After striking the victim about half a dozen times, the defendant ran back to his car, reversed quickly down College Street and drove away.

"The defendant was stopped in his vehicle by the police approximately one-half hour later. The defendant's right hand was lacerated and swollen, and he explained that he had just been in an altercation with the victim on College Street. Additionally, the victim's baseball bat was found inside the defendant's car." *State* v. *Ramirez*, supra, 107 Conn. App. 54–55.

Thereafter, the defendant was charged with attempted assault in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-59 (a) (1), assault in the second degree, threatening in the second degree, carrying a dangerous weapon in violation of General Statutes § 53-206 (a)[3] and failure to appear in the first degree in violation of General Statutes § 53a-172. The jury found him guilty of assault in the second degree and threatening in the second degree and acquitted him of the remaining charges. The trial court rendered judgment in accordance with the verdict.

[3] General Statutes § 53-206 (a) provides in relevant part: "Any person who carries upon his or her person any . . . dangerous or deadly weapon or instrument, shall be fined not more than five hundred dollars or imprisoned not more than three years or both. . . ."

On appeal to the Appellate Court the defendant claimed, inter alia, that the trial court improperly had denied his motion for a judgment of acquittal on the assault charge. Id., 56. The defendant argued that the jury verdict of guilty on that charge was inconsistent with the verdict of not guilty of carrying a dangerous weapon. Id. The Appellate Court concluded that the verdict was not legally inconsistent because "the crimes of assault in the second degree and carrying a dangerous weapon contain different elements"; id., 58; and that, even if the verdict was factually inconsistent, a factually inconsistent verdict will not be overturned on appeal. Id., 58–59. Accordingly, the Appellate Court rejected the defendant's claim.

This certified appeal followed. The defendant claims that the Appellate Court improperly determined that the verdict was not legally inconsistent. He argues that, because the jury could not reasonably have found that the defendant was not carrying the bat, to acquit him on the charge of carrying a dangerous weapon, the jury necessarily must have found that the bat was not a dangerous weapon. He further argues that, if the jury found that the bat was not a dangerous weapon, it reasonably could not have convicted him of assault in the second degree. The state disputes the defendant's claim that *using* a dangerous weapon in violation of § 53a-60 (a) (2) is the same thing as *carrying* a dangerous weapon in violation of § 53-206 (a), and also contends, essentially as an alternate ground for affirmance, that this court should adopt the rule adopted by the United States Supreme Court in *United States* v. *Powell*, 469 U.S. 57, 105 S. Ct. 471, 83 L. Ed. 2d 461 (1984), that a claim that a conviction and an acquittal are legally inconsistent is not reviewable.

In *State* v. *Arroyo*, 292 Conn. 558, 586, 973 A.2d 1254 (2009), which was released on the same date as this opinion, we adopted the rule that claims of legal incon-

sistency between a conviction and an acquittal are not reviewable in accordance with *Powell*. We adopt the reasoning and result of that opinion herein and, therefore, we conclude that the defendant's claim is not reviewable. Accordingly, we affirm the judgment of the Appellate Court on this alternate ground.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.