STATE OF CONNECTICUT *v.* FRANCIS J.
KURZATKOWSKI, JR.
(AC 29610)

Lavine, Beach and McDonald, Js.

Argued October 22, 2009—officially released March 2, 2010

*Michael Zariphes*, special public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, senior assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *Michael A. DeJoseph*, assistant state's attorney, for the appellee (state).

*Opinion*

MCDONALD, J. The defendant, Francis J. Kurzatkow-ski, Jr., appeals from the judgment of conviction,[1] rendered after a jury trial, of assault of a peace officer in

---

[1] The defendant also was charged with and found guilty of failure to stop a motor vehicle when signaled in violation of General Statutes § 14-223 (b), operating a motor vehicle while under the influence of intoxicating liquor

violation of General Statutes § 53a-167c (a) (1)[2] and interfering with an officer in violation of General Statutes § 53a-167a (a).[3] On appeal, the defendant claims that (1) there was insufficient evidence to establish assault of a peace officer, (2) the trial court improperly failed to instruct the jury on the elements of intent and causation in its charge on assault of a peace officer, (3) § 53a-167c (a) (1) did not adequately apprise him that his conduct constituted the crime of assault of a peace officer without intending to cause the peace officer physical injury and, therefore, was unconstitutionally vague, and (4) the court violated his right not to be placed in double jeopardy. We affirm in part and reverse in part the judgment of the trial court.

The jury could reasonably have found the following facts. On the morning of January 13, 2006, shortly before 1 a.m., the intoxicated defendant departed the Black Bear Saloon in Norwalk. John Taranto, a Norwalk police officer, was stationed at the corner of North Water Street and Washington Street when he heard the defendant's tires screeching and observed the defendant driving in his direction without activating his headlights. Taranto exited his cruiser. The defendant stopped his car about fifteen feet from Taranto. When Taranto approached the defendant to talk to him, the defendant

in violation of General Statutes § 14-227a (a) (2) and reckless driving in violation of General Statutes § 14-222 (a). Those charges are unrelated to this appeal.

[2] General Statutes § 53a-167c (a) provides in relevant part: "A person is guilty of assault of public safety or emergency medical personnel when, with intent to prevent a reasonably identifiable peace officer . . . from performing his or her duties, and while such peace officer . . . is acting in the performance of his or her duties, (1) such person causes physical injury to such peace officer . . . ."

[3] General Statutes § 53a-167a (a) provides in relevant part: "A person is guilty of interfering with an officer when such person obstructs, resists, hinders or endangers any peace officer . . . in the performance of such peace officer's . . . duties."

accelerated his car and almost hit Taranto. The defendant, who was on parole, put his car into reverse and backed up on Washington Street. Shortly after radioing headquarters about the incident, Taranto observed Sergeant James Walsh try to stop the defendant by turning on his cruiser's overhead lights.

When the defendant saw Walsh turn on his cruiser's overhead lights, he stopped, put his car back into drive and sped forward, almost hitting Taranto in his cruiser. With several police cars now in pursuit, the defendant continued to drive at a high rate of speed through Norwalk, disregarding stop signs and traffic signals. He fled until he lost control of his vehicle when it hit a guardrail on the Route 7 north connector of the combined Interstate 95 south and Route 7 north entrance ramp. Following the crash, Walsh observed the defendant exit his car and start to run south on the connector back down the ramp. Walsh radioed headquarters, exited his cruiser and ran after the defendant.

When Walsh caught up to the defendant, he tackled him from behind and they both fell to the ground, against the guardrail. The defendant violently fought and kicked Walsh, so Walsh tried to straddle the defendant in order to handcuff him. Walsh also attempted repeatedly to subdue the defendant with his Taser gun. John Haggerty, a Norwalk police officer, testified that during this struggle, he ran to help Walsh, slipped on sand and hit both Walsh and the defendant, knocking Walsh away from the defendant and onto the ground. Walsh then got back up and joined Haggerty, who was now wrestling with the defendant. Several other officers arrived to assist Walsh and Haggerty in subduing the defendant. The officers eventually were able to handcuff the defendant and carry him to the cruiser.

Walsh testified that after the incident, he found that he had "bloodied both knees . . . [and] had an ankle

injury which required doctor's attention . . . an Achilles tendon which required a [workers' compensation insurance claim], and things like that," and he also suffered pain. When Walsh was asked if his Achilles tendon injury had occurred as a result of having tackled the defendant, he responded, "I don't really know when it occurred; all I know [is that] I felt it after everything stopped. I pulled up my pants, I had two bloody knees and I remember I had to go to the doctor the next day, and had to . . . go on [workers' compensation] for a few days . . . ."

On October 17, 2007, the jury found the defendant guilty on all five counts charged in the information. The defendant also entered a plea of nolo contendere to part B of the information, which charged him with being a persistent serious felony offender in violation of General Statutes § 53a-40 (c) and with having previously been convicted of operating a motor vehicle while under the influence of intoxicating liquor or drugs pursuant to General Statutes § 14-227a (g). The court sentenced the defendant to the following terms of imprisonment: two years and one day, followed by ten years special parole for assault of a peace officer; one year for operating a motor vehicle while under the influence of intoxicating liquor or drugs; thirty days for failure to stop a motor vehicle when signaled; thirty days for interfering with an officer; and thirty days for reckless driving. The sentences imposed were ordered to run concurrently, for a total effective sentence of two years and one day in prison followed by ten years of special parole. This appeal followed.

I

The defendant claims on appeal that the evidence was insufficient to support his conviction of assault of a peace officer pursuant to § 53a-167c (a) (1). The defendant claims that the state presented insufficient

evidence to prove beyond a reasonable doubt that (1) he had the requisite specific intent to injure Walsh and (2) Walsh was injured by any of the defendant's actions. We disagree.

The defendant's claim of insufficient evidence is reviewable even if it may not have been properly preserved at trial. Our Supreme Court has held that "[u]npreserved sufficiency claims are reviewable on appeal because such claims implicate a defendant's federal constitutional right not to be convicted of a crime upon insufficient proof." (Internal quotation marks omitted.) *State* v. *Sam*, 98 Conn. App. 13, 32 n.17, 907 A.2d 99, cert. denied, 280 Conn. 944, 912 A.2d 478 (2006). Accordingly, we will review the defendant's challenge to the sufficiency of the evidence.

"The standard of review we apply to a claim of insufficient evidence is well established. . . . [W]e apply a two-part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Ramirez*, 107 Conn. App. 51, 62, 943 A.2d 1138 (2008), aff'd, 292 Conn. 586, 973 A.2d 1251 (2009).

Pursuant to General Statutes § 53a-167c (a), to prove a person guilty of assault of a peace officer, the state must establish beyond a reasonable doubt that the defendant "with intent to prevent a reasonably identifiable peace officer . . . from performing his or her duties, and while such peace officer . . . is acting in the performance of his or her duties . . . causes physical injury to such peace officer . . . ." General Statutes § 53a-167c (a); see also *State* v. *Casanova*, 255 Conn. 581, 592, 767 A.2d 1189 (2001).

The requisite intent for assault of a peace officer is the intent to prevent the peace officer from performing his duties rather than the intent to cause the resulting injury. "Intent to cause physical injury is not a prerequisite to culpability under this statute." *State* v. *Nixon*, 32 Conn. App. 224, 237, 630 A.2d 74 (1993), aff'd, 231 Conn. 545, 651 A.2d 1264 (1995).

At trial, Walsh testified that in an effort to arrest the defendant, who had fled on foot, he tackled him from behind and they both fell into a guardrail. He continued to wrestle with the defendant, who was violently fighting and kicking him, and tried to straddle the defendant to handcuff him. He also repeatedly attempted to use his Taser gun to subdue the defendant. It was only after Walsh was joined by several other officers that an officer was able to handcuff the defendant. Walsh further testified that as a result of the struggle with the defendant, he had bloodied both knees, suffered an ankle injury that required medical attention, his Achilles tendon required a workers' compensation insurance claim and he also suffered pain.

Construing the evidence in a light most favorable to sustaining the verdict, we conclude that the jury reasonably could have found that the defendant was guilty beyond a reasonable doubt of assaulting a peace officer. The jury had sufficient evidence before it from which it could conclude that the defendant had the requisite intent to prevent Walsh from performing his duties, and the defendant's actions were a proximate cause of Walsh's injuries. We reject the defendant's argument.

II

The defendant claims that the court improperly failed to instruct the jury on the elements of intent and causation as to the charge of assault of a peace officer. The defendant also argues that, by failing to instruct the

jury on essential elements of the crime, the court misled the jury and deprived him of his right to due process. We find no merit in the defendant's claim.

A

The defendant adequately preserved his claim at trial that the court improperly failed to instruct the jury on the element of intent. The defendant argues that the court misled the jury when it failed to define the specific intent to injure element as to the charge of assault of a peace officer.[4] Our Supreme Court has held, however, that the requisite intent for assault of a peace officer is the intent to prevent the peace officer from performing his duties rather than the intent to cause the resulting injury. See *State* v. *Nixon*, 231 Conn. 545, 552–54, 651 A.2d 1264 (1995). Having reviewed the charge as a whole, we conclude that it is not reasonably possible that the jury was misled.

B

The defendant did not preserve his claim that the court failed to instruct the jury properly on the element of causation and, therefore, seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), or the plain error doctrine.[5] See Practice Book § 60-5.

[4] The court instructed the jury: "For you to find the defendant guilty of this charge, the [s]tate must prove the following elements beyond a reasonable doubt. One, that the victim of the assault was a reasonably identifiable peace officer. Two, that the conduct of the defendant occurred while the police officer acted in the performance of his duties. Three, that the defendant had the specific intent to prevent the peace officer from performing his lawful duty. And four, that the defendant caused physical injury to the peace officer. This charge applies only to Sergeant Walsh."

[5] To prevail under the plain error doctrine, the defendant must demonstrate that "the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice." *State* v. *Day*, 233 Conn. 813, 849, 661 A.2d 539 (1995). This doctrine is not "implicated unless the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) Id., quoting *State* v. *Boles*, 223 Conn. 535, 551, 613 A.2d 770 (1992). We conclude that the defendant has not met the rigorous standard for prevailing under the plain error doctrine.

A defendant can prevail on a claim of constitutional error not preserved at trial only by satisfying the four conditions of *Golding*.[6] *State* v. *Golding*, supra, 239. "[W]e are free, however, to dispose of the claim by focusing on the condition that appears most relevant under the circumstances of the case." (Internal quotation marks omitted.) *State* v. *Krzywicki*, 39 Conn. App. 832, 836, 668 A.2d 387 (1995), quoting *State* v. *Andrews*, 29 Conn. App. 533, 537, 616 A.2d 1148 (1992), cert. denied, 224 Conn. 924, 618 A.2d 531 (1993).

A "failure to instruct the jury adequately with regard to an essential element of the crime of assault of a peace officer may result in a due process violation implicating the fairness of the trial. . . . The issue is one of constitutional magnitude implicating a fundamental right." (Citation omitted.) *State* v. *Dunbar*, 37 Conn. App. 338, 342, 656 A.2d 672, cert. denied, 233 Conn. 906, 657 A.2d 644 (1995). The defendant has failed to show, however, that a constitutional violation clearly exists and that he was clearly deprived of a fair trial.

The defendant claims that the court improperly failed to instruct the jury as to the intervening cause doctrine. The defendant argues that because Haggerty slipped and hit both Walsh and the defendant, there was an intervening cause of Walsh's injuries, and that the absence of such an instruction misled the jury and deprived him of a fair trial.

"Our Supreme Court has discussed the requirements of proper jury instructions on [intervening cause] in

---

[6] The four conditions of *Golding* are: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." *State* v. *Golding*, supra, 213 Conn. 239–40.

criminal prosecutions in several decisions. . . . [Our] Supreme Court . . . stated in *State* v. *Munoz*, [233 Conn. 106, 121 n.8, 659 A.2d 683 (1995)]: We emphasize that, as *State* v. *Leroy*, [232 Conn. 1, 13, 653 A.2d 161 (1995)], suggests, the requirement of language in the jury instructions regarding an efficient, intervening cause is not ironclad. It arises in those cases in which the evidence could support a finding by the jury that the defendant's conduct was overcome by an efficient, intervening cause, or in which the evidence regarding proximate causation was such that, based on the doctrine of efficient, intervening cause, the jury could have a reasonable doubt about the defendant's guilt." (Citations omitted; internal quotation marks omitted.) *State* v. *Jenkins*, 40 Conn. App. 601, 607–608, 672 A.2d 969, cert. denied, 237 Conn. 918, 676 A.2d 1374 (1996). In *Munoz*, our Supreme Court defined intervening cause as one that "does more than supply a concurring or contributing cause of the injury, but is unforeseeable and sufficiently powerful in its effect that it serves to relieve the defendant of criminal responsibility for his conduct." *State* v. *Munoz*, supra, 124.

We conclude that the court did not improperly fail to instruct the jury on the intervening cause doctrine. Walsh testified at trial that he struggled with the defendant, who resisted arrest. Haggerty testified that as he approached the struggle to assist Walsh, he slipped and hit both Walsh and the defendant. The facts support the conclusion that if the defendant had not struggled and resisted arrest, Haggerty would not have slipped and hit Walsh, who was grappling with the defendant, knocking Walsh to the ground. It was foreseeable that other officers, such as Haggerty, would come to Walsh's aid in subduing the defendant. Because an instruction on the intervening cause doctrine was not warranted by the evidence, failing to give such an instruction did not present a reasonable possibility that the jury was

misled nor the defendant deprived of due process. Therefore, we conclude the defendant has not satisfied the third condition enunciated in *Golding*, and we reject the defendant's claim.

## III

The defendant's third claim is that § 53a-167c (a) (1) is unconstitutionally vague, as applied to him, because he could not have known that his conduct constituted the crime of assault of a peace officer in the absence of intent to cause the officer physical injury. We disagree.

The defendant concedes that he did not properly preserve his claim at trial and seeks to prevail under *State* v. *Golding*, supra, 213 Conn. 239–40, or the plain error doctrine.[7] See Practice Book § 60-5. We review his claim pursuant to *State* v. *Golding*, supra, 239–40. We conclude, however, that the third prong of *Golding* has not been satisfied because the defendant has failed to establish that the alleged constitutional violation clearly exists and clearly deprived him of a fair trial.

Determining whether the defendant's constitutional rights to fair notice were violated presents a question of law over which our review is de novo. *State* v. *Vakilzaden*, 272 Conn. 762, 768–69, 865 A.2d 1155 (2005). "Our analysis first requires us to restate the common-law rule that everyone is presumed to know the law and that ignorance of the law excuses no one from criminal sanction. . . . In reviewing a claim that a statute . . . is unconstitutionally vague, we also must be mindful of the following principles. Our [Supreme Court has held] that a penal statute [must] define [a] criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement. . . . Thus, [i]n order to

---

[7] See footnote 5 of this opinion.

surmount a vagueness challenge, a statute [must] afford a person of ordinary intelligence a reasonable opportunity to know what is permitted or prohibited . . . and must not impermissibly [delegate] basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. . . . Finally, [i]f the meaning of a statute can be fairly ascertained a statute will not be void for vagueness . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Knybel*, 281 Conn. 707, 713–14, 916 A.2d 816 (2007).

"For statutes that do not implicate the especially sensitive concerns embodied in the first amendment, we determine the constitutionality of a statute under attack for vagueness by considering its applicability to the particular facts at issue. . . . [T]o prevail on his claim, the defendant must demonstrate beyond a reasonable doubt that the statute, as applied to him, deprived him of adequate notice of what conduct the statute proscribed or that he fell victim to arbitrary and discriminatory enforcement." (Citation omitted; internal quotation marks omitted.) Id., 714.

As set forth in part I of this opinion, § 53a-167c (a) (1) does not require an intent to cause an injury. The statute clearly provides fair warning that a "specific intent to injure" the officer is not an element of the offense.[8] See *State* v. *Nixon*, supra, 231 Conn. 552–54. As such, § 53a-167c (a) (1), affords a person with ordinary intelligence that "any resulting injury to [the officer

[8] General Statutes § 53a-167c (a) provides in relevant part: "A person is guilty of assault of public safety or emergency medical personnel when, with intent to prevent a reasonably identifiable peace officer . . . from performing his or her duties, and while such peace officer . . . is acting in the performance of his or her duties, (1) such person causes physical injury to such peace officer . . . ."

from intentionally preventing a peace officer from performing his duties when the officer is on duty] whether intentional or otherwise, would give rise to a violation of [the law]." *State* v. *Nixon*, supra, 32 Conn. App. 237. The statute prohibits intentionally interfering with a peace officer and thereby injuring that officer. Id. This prohibition is well known to ordinary people. We conclude that the statute is not unconstitutionally vague, and, therefore, the defendant cannot prevail on his claim under the third prong of *Golding*.

## IV

The defendant's final claim is that his conviction of interfering with an officer and assault of a peace officer violated his right under the United States and Connecticut constitutions not to be placed in double jeopardy.[9] The defendant claims, and the state concurs, that the defendant's unpreserved double jeopardy claim is reviewable under *State* v. *Golding*, supra, 213 Conn. 239–40. We agree. "[I]f double jeopardy claims arising in the context of a single trial are raised for the first time on appeal, these claims are reviewable . . . ." *State* v. *Chicano*, 216 Conn. 699, 705, 584 A.2d 425 (1990), cert. denied, 501 U.S. 1254, 111 S. Ct. 2898, 115 L. Ed. 2d 1062 (1991). As a threshold matter, claims of double jeopardy involving multiple punishments in the same trial present a question of law to which we afford plenary review. *State* v. *Burnell*, 290 Conn. 634, 642, 966 A.2d 168 (2009); *State* v. *Culver*, 97 Conn. App. 332, 336, 904 A.2d 283 (2006), cert. denied, 280 Conn. 935, 909 A.2d 961 (2006).

---

[9] We note that this court has held that our state constitution does not afford any greater due process rights than those afforded under the federal constitution's double jeopardy clause in analyzing double jeopardy claims arising from multiple convictions and punishments imposed in a single trial. *State* v. *Adams*, 38 Conn. App. 643, 654, 662 A.2d 1327, cert. denied, 235 Conn. 908, 665 A.2d 902 (1995); *State* v. *Laws*, 37 Conn. App. 276, 295, 655 A.2d 1131, cert. denied, 234 Conn. 907, 659 A.2d 1210 (1995).

As applied to this case, the double jeopardy clause protects the defendant from multiple punishments for the same offense. To be entitled to this type of double jeopardy protection, the defendant must satisfy both prongs of a two-pronged test. "First, the charges must arise out of the same act or transaction. Second, it must be determined whether the charged crimes are the same offense. . . . In conducting this inquiry, we look only to relevant statutes, the information, and the bill of particulars, not to the evidence presented at trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Palmer*, 206 Conn. 40, 52, 536 A.2d 936 (1988).

From our examination of the information[10] and in light of *State* v. *Mincewicz*, 64 Conn. App. 687, 692–93, 781 A.2d 455 (interpreting vague counts in information in favor of defendant's double jeopardy claims), cert. denied, 258 Conn. 924, 783 A.2d 1028 (2001), we conclude that the double jeopardy clause prohibits the conviction on counts one and two of the information. The state in its appellate brief does not concede error but stated that it fully expects this court to find that the conviction and the sentences imposed on those counts violated the defendant's double jeopardy rights. The state does not urge us to overrule *Mincewicz* in this respect, nor did it submit argument and authorities to that end. The state merely asserts that it does not concede error despite the constraints of *Mincewicz*, so it

---

[10] The first count provides: "The State of Connecticut alleges that on or about January 13, 2006, in Norwalk, Connecticut, [the defendant], with intent to prevent a reasonably identifiable peace officer from performing his or her duties; and while such officer was in the performance of his or her duties, [the defendant] caused physical injury to such officer, to wit: James Walsh, in violation of Connecticut General Statutes § 53a-167c (a) (1)."

The second count provides: "The State of Connecticut alleges that on or about January 13, 2006, in Norwalk, Connecticut, [the defendant] obstructed, resisted, hindered, or endangered any peace officer, in the performance of such peace officer's duties, in violation of Connecticut General Statutes § 53a-167a (a)."

may want to pursue this claim in the Supreme Court. The state concludes its brief by stating, in accordance with *Mincewicz*, that it would expect this court to vacate the defendant's sentence for interfering with an officer and to combine his conviction on that charge with his conviction of assault of a peace officer. Accordingly we do so.

The defendant's sentence for interfering with an officer is vacated and the case is remanded for resentencing. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.